UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PATRICIA HINES, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-13-00167 |
| § | |
| WELLS FARGO BANK, N.A., *et al.,* § | |
| § | |
| *Defendants*. § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is a combined motion for summary judgment and motion to dismiss filed by defendants Wells Fargo Bank, N.A. ("Wells Fargo"), America's Servicing Company ("ASC"), Deutsche Bank Trust Company as Trustee for Securitized Trust Morgan Stanley Home Equity Loan Trust 2007-1 ("Deutsche Bank"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "defendants"). Dkt. 38. The court has considered the motions, responsive briefing, record evidence, and applicable law. For the reasons that follow, the motions (Dkt. 38) are **GRANTED IN PART & DENIED IN PART**. Plaintiff Patricia Hines's ("Hines") claims are **DISMISSED WITH PREJUDICE**, and defendants' request for attorneys' fees and costs is **DENIED WITHOUT PREJUDICE**. The court will decide the issue of attorneys' fees when it adjudicates defendants' counterclaim. Defendants' motion for judgment on the pleadings (Dkt. 46) is **DENIED AS MOOT**.

**I. BACKGROUND**

Although the parties have drastically differing views of the applicable law in this case, the basic facts are not in dispute. On October 10, 2006, Hines took out a home loan in the amount of $130,160.00 in favor of First NLC Financial Services, LLC ("First NLC"), the "Lender," for the purchase of a home in Spring, Texas. Dkt. 38, Ex. A (the promissory note). Hines contemporaneously executed a deed of

trust (the "deed") to secure payment of the note.[1] Dkt. 38, Ex. B (the deed). The deed named Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for First NLC and its successors and assigns.[2] *Id.* at 1. The deed also specified that MERS had "the right to foreclose and sell the [home]; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." *Id.* at 3. On September 30, 2008, MERS recorded an assignment of the note and deed in which MERS purported to assign the note and deed to Deutsche Bank. Dkt. 38, Ex. C (assignment). Wells Fargo, through its subsidiary ASC, services the loan for Deutsche Bank. Dkt. 38, Ex. H (declaration of Michael Dolan) at 2 ¶ 10.

The note required Hines to remit monthly payments to the Lender on the first day of each month beginning December 1, 2006. Dkt. 38, Ex. A at 1 ¶ 3. Hines fell behind her payments, however, and she defaulted under the terms of the note. Dkt. 38, Ex. H at 2 ¶ 11. In early October 2008, Hines and Wells Fargo entered into a special forbearance agreement, and she was approved for a loan modification on January 20, 2009. *Id.* at 2 ¶ 12; Dkt. 38, Ex. D (special forbearance agreement); Dkt. 38, Ex. E (first loan modification agreement). After Hines defaulted again, the parties executed a second loan modification on or about April 4, 2010. *See* Dkt. 38, Ex. H at 3 ¶ 13; Dkt. 38, Ex. F (second loan modification agreement).

Hines defaulted a third time on her home loan, and on October 17, 2012, ASC sent Hines a notice of default. Dkt. 38, Ex. H at 3 ¶ 14; Dkt. 38, Ex. G (notice). The notice required payment of the loan delinquency by November 20, 2012, and it stated that failure to do so would result in acceleration of the

---

[1] Courts interchangeably use the terms "deed of trust" and "mortgage" throughout the relevant case law. *See Starcrest Trust v. Berry*, 926 S.W.2d 343, 351 (Tex. App.—Austin 1996, no writ) (defining "deed of trust" as a mortgage with power to sell on default). This court will generally refer to the "deed of trust" in this opinion as simply the "deed."

[2] The MERS system is an "electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans." *In re Mortg. Elec. Registration Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1370 (J.P.M.L. 2009).

note. Dkt. 38, Ex. H at 3 ¶ 15; Dkt. 38, Ex. G at 1. Hines failed to cure her default within the requisite time period, Dkt. 38, Ex. H at 3 ¶ 16, and no party has foreclosed on the home to date, in which Hines still resides.

On January 11, 2013, Hines filed this lawsuit in the 127th Judicial District Court of Harris County, Texas. Dkt. 1 (notice of removal) at 1 ¶ 1. Defendants timely removed the case to this court on January 23, 2013. *Id.* at 1. In Hines's live pleading, she asserts the following claims: a declaratory judgment claim to prevent a wrongful foreclosure; fraud in the concealment; fraud in the inducement; intentional infliction of emotional distress; slander of title; quiet title; rescission; violations of the Truth in Lending Act and the Home Ownership and Equity Protection Act; violations of the Real Estate Settlement Procedures Act; and other miscellaneous violations.

## II. STANDARD OF REVIEW

Defendants have moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and/or moved for summary judgment under Rule 56 as to each of Hines's causes of action.

### A. *Motions to Dismiss*

For most causes of action, Rule 8(a)(2) requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In turn, a party against whom claims are asserted may move to dismiss those claims when the pleader has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To meet this standard, a pleading must offer "'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if

3

doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).  While the allegations need not be overly detailed, a plaintiff's pleading must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) ("[N]aked assertions devoid of further factual enhancement," along with "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth).  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a party's claim contains allegations of fraud, the pleading must meet a heightened standard and "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185–86 (5th Cir. 2009) (noting that Rule 9(b) does not "supplant" Rule 8(a)).  Instead, pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting fraud, which . . . must make relief plausible, not merely conceivable, when taken as true." *Id.* at 186 (internal quotation marks omitted) (referring to the standard enunciated in *Twombly*).  The Fifth Circuit strictly interprets Rule 9(b) and requires the pleader "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Hermann Holdings Ltd. v.*

4

*Lucent Techs., Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002) (internal quotation marks omitted). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 690 (E.D. Tex. 2009) (internal quotation marks omitted).

### B.     *Motions for Summary Judgment Under Rule 56*

Once the case moves beyond the pleadings, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The movant bears the initial burden of informing the court of evidence, if any, that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the movant has discharged its initial burden does the burden shift to the nonmovant to demonstrate that there is a genuine dispute of material fact. *Id.* at 322. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248.

Rule 56 requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine dispute for trial. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994); *Wallace*, 80 F.3d at 1047. Instead, the nonmovant must identify specific evidence

in the record and articulate precisely how that evidence supports his or her claims. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). When the nonmovant fails to set forth specific facts, by affidavits or otherwise, to show that there is a genuine dispute for trial, summary judgment is appropriate. *Topalian v. Ehrman*, 954 F.2d 1125, 1132 (5th Cir.1992). Factual controversies are to be resolved in favor of the nonmovant, "'but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996). The court will not, "in the absence of any proof, assume that the [nonmovant] could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine dispute for trial. *Anderson*, 477 U.S. at 249–51.

### III. ANALYSIS

Hines pled ten causes of action in her first amended complaint. The court considers the defendants' dismissal arguments for each claim.

### A. *Lack of Standing/Wrongful Foreclosure*

In her first claim, Hines apparently seeks a declaration from this court that any foreclosure of her home would be wrongful because no defendant has standing to foreclose due to defects in the assignment and securitization process.[3] Specifically, her wrongful foreclosure allegations can be grouped into two categories: (1) MERS lacked authority to assign the deed *and* note from First NLC to Deutsche Bank;

---

[3] Hines's claim must be one for declaratory relief because an attempted wrongful foreclosure claim is not recognized under Texas law and a traditional wrongful foreclosure claim would not be ripe because Hines remains in possession of her home. *See Port City State Bank v. Leyco Constr. Co.*, 561 S.W.2d 546, 547 (Tex. Civ. App.—Beaumont 1977, no writ) (finding no supporting authority for an attempted wrongful foreclosure claim under Texas law); *Ayers v. Aurora Loan Servs.*, 787 F. Supp. 2d 451, 454 (E.D. Tex. 2011) ("Plaintiff has not alleged an actual violation of the Texas Property Code because no foreclosure sale has occurred.").

and (2) defendants did not comply with the securitization requirements of the applicable Pooling and Servicing Agreement ("PSA").[4] Under recent Fifth Circuit case law, however, both of these grounds fail and her wrongful foreclosure claim must be dismissed.

Hines contends that defendants cannot show an unbroken chain of title to enforce the note because MERS had no authority to assign the note to Deutsche Bank. Dkt. 43 at 12–13. The defendants respond that Hines lacks standing to challenge any assignments of her note and deed to which she was not a contracting party. Dkt. 38 at 7–8. The defendants further respond that even if Hines has standing, she has not shown that the defendants lack authority to foreclose. *Id.* at 10.

The Fifth Circuit recently issued a published opinion addressing each of these arguments. *See Reinagel v. Deutsche Bank Nat'l Trust Co.*, 722 F.3d 700 (5th Cir. 2013). In *Reinagel*, the mortgagors defaulted on their note and sought to enjoin the foreclosure, contending that the assignments by which the bank obtained the note and deed were invalid. *Id.* at 702. The Fifth Circuit initially held that the mortgagors could argue that the transfers were void, because while "an obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that merely renders the assignment voidable at the election of the assignor, Texas courts follow the majority rule that the obligor *may* defend 'on any ground which renders the assignment void.'" *See id.* at 705 (quoting *Tri-Cities Constr., Inc. v. Am. Nat'l Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ)); *see also Ortiz v. CitiMortgage, Inc.*, — F. Supp. 2d —, 2013 WL 3157907, at *4 (S.D. Tex. 2013) (Miller, J.) (holding

---

[4] "Securitization" refers to the "process of pooling loans and selling them to investors on the open market." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1197 n.2 (10th Cir. 2011). A PSA is one of many "complex, interrelated contracts" typically executed when a mortgage securitization trust is formed. *Chase Manhattan Mortg. Corp. v. Advanta Corp.*, No. Civ. A. 01-507 KAJ, 2005 WL 2234608, at *1 (D. Del. Sept. 8, 2005). In a mortgage securitization, the securitizing party acquires mortgage notes, pools them together, and then sells them into a trust. *Id.* Interests in the trust are sold to investors, and the money raised is used for new mortgages. *BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169, 173 (2d Cir. 2012). In this case, defendant Deutsche Bank acted as the trustee for the Morgan Stanley Loan Trust 2007-1, which was the assignee of Hines's promissory note and security instrument. *See* Dkt. 38, Ex. C at 1.

that plaintiffs could challenge an assignment on grounds that it did not occur because such an allegation goes to the issue of validity *ab initio*). And while this holding extends to assignments in the securitization process, a breach of the PSA would not render it void, and the mortgagors thus may not challenge the resulting validity of the PSA itself. *Reinagel*, 722 F.3d at 708.

To the extent Hines is arguing that MERS's assignment of the note and deed to Deutsche Bank is procedurally or substantively irregular under the PSA, she has no standing to do so against any mortgagee. Moreover, she also lacks standing to challenge the assignments to Deutsche Bank under general Texas law because she is not arguing that there is a missing link in the chain of title. Instead, she is essentially arguing that MERS lacked authority to assign the note and deed to an assignee, namely Deutsche Bank. But an assignment executed by an unauthorized agent is not void under Texas law—it is voidable at the election of the defrauded assignor. *Id.* at 706–07; *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976) (holding that a contract executed by a person falsely claiming to be a corporate officer is voidable by the defrauded corporation); 29 RICHARD A. LORD, WILLISTON ON CONTRACTS § 74:50 (4th ed. 2012) ("If the objection to the validity of an assignment is not that it is void but voidable only at the option of the assignor, or of some third person, the debtor has no legal defense whether or not action is brought in the assignee's name, for it cannot be assumed that the assignor is desirous of avoiding the assignment."). Hines has no standing to challenge MERS's assignment on grounds that MERS lacked the authority to do so.

But even assuming that Hines had standing to challenge MERS's assignments, her substantive objection would fail. Hines claims that without having the contractual right to assign the note, MERS's assignment of the deed is void under the common-law rule that the "assignment of the [mortgage] alone is a nullity." *McCarthy v. Bank of Am., NA*, No. 4:11-cv-356-A, 2011 WL 6754064, at *3 (N.D. Tex.

Dec. 22, 2011) (quoting *Carpenter v. Longan*, 83 U.S. (16 Wall.) 271, 274 (1872)); *see also Best Fertilizers of Ariz., Inc. v. Burns*, 571 P.2d 675, 676 (Ariz. Ct. App. 1977) ("The note is the cow and the mortgage the tail. The cow can survive without a tail, but the tail cannot survive without the cow."). But these cases rely on sources outside Texas law, and Texas courts generally follow the Restatement approach, under which a mortgage assignment presumptively "includes the note secured by the mortgage, whether or not the instrument of assignment expressly references the note." *See* RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 5.4(b) (1997) ("[A] transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise."); *Reinagel*, 722 F.3d at 706 (agreeing with the Restatement approach without deciding whether the Texas Supreme Court would hold likewise); *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *4 (Tex. App.—Austin Aug. 30, 2012) ("Although [the mortgagor's] note containing the express right to transfer did not identify MERS, [the mortgagor's] deed of trust did identify MERS, and because the note and deed of trust must be read together when evaluating their provisions, MERS had the authority to assign the note and the deed of trust."). Under this approach, MERS's authority to assign the deed, which Hines does not contest, also gave it the authority to assign the note.

In sum, Hines's challenges to the chain of title, which are essential to her request for declaratory relief, may not be heard in this wrongful foreclosure action. The property records provided by the defendant and referenced in Hines's amended complaint show that Deutsche Bank is the mortgagee as the current holder and owner of the note. Dkt. 38, Ex. C; TEX. PROP. CODE § 51.0001(4)(A) (defining a "mortgagee" to include "the grantee, beneficiary, owner, or holder of a security instrument"). There is also no genuine dispute of material fact that ASC is a "mortgage servicer" under Texas law as Hines entered several modification agreements regarding payments to ASC as late as April 2010. Dkt. 38, Ex.

H at 2 ¶ 10; TEX. PROP. CODE § 51.0001(3) (defining "mortgage servicer" to be the "last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument"). As such, either Deutsche Bank or ASC is entitled to foreclose on the note and deed. *Rearden v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *4 (W.D. Tex. July 25, 2011) (explaining that a mortgagee or mortgage servicer may foreclose, regardless of their holder status). Hines's evidence, for which she provides no argument to explain its relevance, shows at best that a purported Wells Fargo employee signed certain assignments in 2008, without authorization, as a representative of MERS and Wells Fargo/ASC. *See* Dkt. 43, Ex. A. But as stated above, an assignment signed by an unauthorized agent is not void, and Hines has no standing to challenge it. *Reinagel*, 722 F.3d at 706–07 (dismissing a challenge to an instrument signed by a third-party contractor who claimed to be an employee of the principal because his "lack of authority, even accepted as true, does not furnish the [plaintiffs] with a basis to challenge the second assignment"). Summary judgment is granted as to Hines's lack of standing/wrongful foreclosure claim.

### *B.  Fraud*

Hines next alleges claims of fraud in the concealment and inducement. She contends that the defendants defrauded her by not disclosing the incentives paid to complete the securitization of her loan, which she argues "had a materially negative effect on [her] that was known by [defendants] but not disclosed." Dkt. 30 at 20–21 ¶ 76. Hines also contends that defendants committed fraud by affirmatively misrepresenting that they were entitled to exercise the deed's power of sale provision and that they were legal holders or beneficiaries of the note and deed. *Id.* at 22–24.

The elements of fraud under Texas law are: "(1) a [material] misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by

10

(4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). When the plaintiff alleges fraud by omission, "[c]ourts in Texas have consistently held that fraud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose." *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir. 2005). A duty to disclose arises between parties in a confidential or fiduciary relationship or between non-fiduciaries when "one party learns later that his previous affirmative statement was false or misleading." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001); *Tempo Tamers, Inc. v. Crow-Houston Four, Ltd.*, 715 S.W.2d 658, 669 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (a duty to disclose arises when "a party later learns that previous affirmative representations are in fact false").

Here, Hines has not alleged any special relationship between herself and any of the defendants. Further, she has not alleged with particularity what incentives were paid to third parties, why these incentives were fraudulent, or how she relied on these payments to her detriment. She also failed to identify any specific speaker of fraudulent statements, or when and where they were made, all of which are necessary for properly pled fraud claims in federal court. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Lastly, in light of the court's dismissal of her wrongful foreclosure claim, Hines has not properly pled any facts to support her contentions that defendants deceived her or that defendants lacked the authority to foreclose. Hines did not move for leave to amend her complaint, and in any case an amendment of her fraud claims would be futile. Hines's claims of fraud in the concealment and inducement are dismissed with prejudice.

11

C.   *Intentional Infliction of Emotional Distress*

Hines alleges that defendants have engaged in outrageous conduct by fraudulently attempting to foreclose or claiming that they have the right to foreclose as holders of the note and deed. Dkt. 30 at 24–25. Defendants move for summary judgment on Hines's claim of intentional infliction of emotional distress ("IIED") because defendants have a legal right to foreclose and cannot have committed the tort of IIED under Texas law. Dkt. 38 at 31–32. The court agrees with defendants.

To prevail on an IIED claim in Texas, a plaintiff must demonstrate: (1) intentional or reckless conduct; (2) that is extreme or outrageous; (3) that caused emotional distress; and (4) that was severe in nature. *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 218 (5th Cir. 1995). As to the second element, the mere fact that conduct is tortious or otherwise wrongful does not render it "extreme or outrageous." *Bradford v. Veneto*, 48 S.W.3d 749, 758 (Tex. 2001). Rather, extreme or outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999) (internal quotation marks omitted). Moreover, beyond these malleable definitions of what constitutes actionable conduct, Texas courts have made clear that conduct associated with exercising a legal right is privileged and *cannot* be the basis for an IIED claim. *Zurita v. Lombana*, 322 S.W.3d 463, 474 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (initiation and prosecution of a lawsuit is not, as a matter of law, extreme or outrageous); *Wieler v. United Savings Ass'n of Tex., FSB*, 887 S.W.2d 155, 159 (Tex. App.—Texarkana 1994, writ denied) ("Even if the creditor's conduct is extreme or outrageous, he does not commit the tort if he does no more than insist on his legal rights in a permissible way."); RESTATEMENT (SECOND) OF TORTS § 46, cmt. g (1965).

In this case, the pleading and proof demonstrate that defendants' conduct was the mere assertion of a legal right to foreclose under the deed, a showing which fails to support an IIED claim as a matter of Texas law. And even assuming a defendant initiated the foreclosure process "with the specific intent of inflicting emotional distress on the Plaintiff," Dkt. 30 at 24 ¶ 98, which the summary-judgment evidence does not support, this allegation is irrelevant when a defendant exercises its legal rights. RESTATEMENT (SECOND) OF TORTS § 46, cmt. g (1965) ("The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress."). Summary judgment is granted on Hines's IIED claim.

### D. *Slander of Title*

Hines alleges that the defendants' notice of default and trustee's sale slandered Hines's valid title. Dkt. 30 at 26–27. Defendants move for summary judgment on grounds that Hines has no evidence that defendants acted falsely or maliciously and that Hines lost a specific sale as a result of defendants' conduct. Dkt. 38 at 32–33.

Under Texas law, "'[S]lander of title' is defined as a false and malicious statement made in disparagement of a person's title to property which causes special damages." *Elijah Ragira/VIP Lodging Grp., Inc. v. VIP Lodging Grp., Inc.*, 301 S.W.3d 747, 758 (Tex. App.—El Paso 2009, no pet.). The necessary elements are "the uttering and publishing of disparaging words that were false and malicious, that special damages were sustained, and that the injured party possessed an interest in the property disparaged. . . . Further, the complaining party must demonstrate the loss of a specific sale." *Id.* at 759 (citation omitted).

Here, the pleading and proof fall far short of establishing a slander of title claim. Hines has not stated any facts, nor does the evidence show, that defendants made any false or malicious statement regarding their authority to foreclose. *See Storm Assocs., Inc. v. Texaco, Inc.*, 645 S.W.2d 579, 588 (Tex. App.—San Antonio 1982) ("A claim of title does not constitute malice where the claim is made under color of title or upon reasonable belief that parties have title to the property acquired."), *aff'd sub nom. Friedman v. Texaco, Inc.*, 691 S.W.2d 586 (Tex. 1985). Hines has also not alleged that she lost a specific sale of her home to support a slander of title claim. *Elijah Ragira*, 301 S.W.3d at 759. Indeed, she alleges just the opposite—that the defendants' misconduct should lead the court to "quiet title to the property in [her] name." Dkt. 30 at 5 ¶ 14. For these reasons, summary judgment is granted on Hines's cause of action for slander of title.

E.     *Quiet Title*

Hines alleges that no defendant holds a perfected and secured claim to her home, and thus the court should quiet title in her name and enjoin defendants from asserting any adverse interest in the home. Dkt. 30 at 27–28. Defendants seek dismissal of this claim on grounds that Hines cannot show a superior interest in the real property. The court agrees with defendants.

A claim for quiet title "'enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (quoting *Thomson v. Locke*, 1 S.W. 112, 115 (Tex. 1886)). "[T]he plaintiff has the burden of supplying the proof necessary to establish his *superior equity and right to relief*." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (emphasis added). The effect, therefore, of a suit to quiet title is to establish that the defendant's

claim to title is "invalid or ineffective." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

As a matter of law, Hines cannot demonstrate a superior right to relief. Defendants' claimed authority to foreclose is valid, and this fact precludes Hines's suit to quiet title. Hines's quiet title claim is dismissed with prejudice.

*F.     Rescission*

Hines contends that the court should rescind the note and accompanying documents due to the defendants' misconduct. Defendants respond that although it is unclear whether Hines is seeking rescission under common-law principles of equity or under the Truth in Lending Act ("TILA"), her request fails as a matter of law on either ground. Again, the court agrees with defendants.

First, if Hines's request is premised on general principles of equity, she must come into the court with clean hands. *Vill. Med. Ctr., Ltd. v. Apolzon*, 619 S.W.2d 188, 191 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ). "The doctrine of unclean hands 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 762 (Tex. App.—Dallas 2012, no pet.) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S. Ct. 993 (1945)). Hines does not dispute that she is in default or that she has not tendered the mortgage payments due. Accordingly, any claim for equitable rescission is dismissed with prejudice.

Second, assuming Hines is seeking rescission under TILA, that claim is subject to a three-year statue of repose that cannot be equitably tolled. 15 U.S.C. § 1635(f); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419, 118 S. Ct. 1408 (1998). The loan documents show that Hines executed the note and deed

15

on October 10, 2006. *See* Dkt. 38, Exs. A, B. Because Hines filed suit in this case on January 11, 2013, more than six years later, her TILA rescission claim is dismissed.

G.     *Violation of TILA/HOEPA*

Hines claims in her eighth cause of action that defendants violated TILA and the Home Ownership and Equity Protection Act ("HOEPA")[5] by not making certain required disclosures "and not taking into account the intent of [Congress] in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders." Dkt. 30 at 29–30 ¶ 126. Defendants respond that this claim is not properly pled and barred by limitations. The court agrees that Hines's TILA claim is untimely.

As a threshold matter, the court has already dismissed Hines' TILA claim for equitable relief, namely rescission. *See* Part III.F, *supra*. By contrast, TILA claims for money damages are subject to a one-year statute of limitations that accrues on the date of the alleged nondisclosure. 15 U.S.C. § 1640(e). The Fifth Circuit has held that the mere nondisclosure of required information is insufficient to toll the statute. *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986) ("To clothe himself in the protective garb of the tolling doctrine, a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct."); *Kelley v. Galveston Autoplex*, 196 F.R.D. 471, 478 (S.D. Tex. 2000) (explaining that "fraudulent conduct, beyond the nondisclosure itself, is necessary to permit the one-year period to be equitably tolled"). Here, Hines's

---

[5] Congress passed HOEPA in 1994 as an amendment to TILA, and it provides additional disclosure obligations for lenders who issue high-cost mortgage loans. *In re Williams*, 330 B.R. 534, 537 n.7 (Bankr. M.D. La. 2005). Because HOEPA and TILA share the same statute of limitations, the court will refer to the combined legislation as "TILA" for purposes of its limitations analysis. 15 U.S.C. § 1635(f); *id.* § 1640(e); *Lechner v. Citimortgage, Inc.*, No. 4:09-cv-302-Y, 2009 WL 2356142, at *4 (N.D. Tex. July 29, 2009).

pleading and the facts show that she filed her case more than six years after the closing of her loan, and she also has not alleged or shown sufficient facts to support tolling of the limitations period. Hines's TILA claim is dismissed with prejudice.

## H.     *Violation of RESPA*

Hines contends that defendants' practice of exchanging certain payments among themselves was fraudulent and violated the Real Estate Settlement Procedures Act ("RESPA"). Dkt. 30 at 31–32; *id.* at 32 ¶ 138. RESPA provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). RESPA also prohibits any person from giving or accepting "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." *Id.* § 2607(b). RESPA claims under § 2607 are subject to a one-year statute of limitations, which begins to run from the date of closing. *See* 12 U.S.C. § 2614; *Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 359 & n.3 (5th Cir. 2003) (affirming dismissal of plaintiffs' RESPA claims as time-barred and explaining that the statute of limitations begins to run when the violation is alleged to have occurred).

As explained above, the evidence shows that Hines closed on her home loan on October 10, 2006. She filed the instant suit on January 11, 2013, more than six years after the violation is alleged to have occurred. Hines has not offered any evidence supporting tolling, if any, and thus her RESPA claim is barred. Summary judgment is granted on Hines's RESPA claim.

I.   *Miscellaneous Allegations*

Hines alleges, for her tenth cause of action, that she and her homestead are protected by three statutes: Texas Property Code § 51.002, Texas Business and Commerce Code § 1.201(21), and Article XVI, section 50 of the Texas Constitution. Beyond this general statement, however, Hines fails to state any facts, or provide any proof for that matter, to support the element of damages related to the alleged violations of these statutes. Without any evidentiary support, these claims are dismissed with prejudice.

### IV. Conclusion

For the foregoing reasons, defendants' motions (Dkt. 38) are **GRANTED IN PART & DENIED IN PART**. Hines's claims are **DISMISSED WITH PREJUDICE**, and defendants' request for attorneys' fees and costs is **DENIED WITHOUT PREJUDICE**. The court will decide the issue of attorneys' fees when it adjudicates defendants' counterclaim. Defendants' motion for judgment on the pleadings (Dkt. 46) is **DENIED AS MOOT**.

It is so **ORDERED**.

Signed at Houston, Texas on October 28, 2013.

_____
Gray H. Miller
United States District Judge